United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZAN LYNN BUNTING,<br>Plaintiff,<br>v.<br>NANCY A. BERRYHILL,<br>Defendant. | Case No. 18-cv-05402-KAW<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 15, 18 |

Plaintiff Suzan Lynn Bunting seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings.

Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed for Title II and Title XVI benefits on September 26, 2014. (Administrative Record ("AR") 233, 235.) Plaintiff asserted disability beginning April 25, 2011. (AR 45.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration (AR 92, 125.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"); the hearing was held on April 26, 2017. (AR 30.)

Following the hearing, the ALJ denied Plaintiff's application on August 30, 2017. (AR 13-24.) A request for review of the ALJ's decision was filed with the Appeals Council on October 27, 2017. (AR 223-24.) The Appeals Council denied Plaintiff's request for review on August 9,

1  2018. (AR 1.) On September 3, 2018, Plaintiff commenced this action for judicial review

2  pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.)

3  Plaintiff filed her motion for summary judgment on January 24, 2019. (Pl.'s Mot., Dkt.

4  No. 15.) Defendant filed an opposition and cross-motion for summary judgment on March 25,

5  2019. (Def.'s Opp'n, Dkt. No. 18.) Plaintiff filed her reply on April 22, 2019. (Pl.'s Reply, Dkt.

6  No. 21.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under Social Security Administration ("SSA") regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

2

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis, despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

### III. DISCUSSION

Plaintiff challenges the ALJ's decision on five grounds: (1) the ALJ improperly rejected Plaintiff's testimony, (2) the ALJ improperly rejected lay witness testimony, (3) the ALJ improperly rejected the opinions of Plaintiff's treating doctors, (4) the ALJ improperly rejected the opinion of Plaintiff's therapist, and (5) the ALJ failed to include limitations on Plaintiff's ability to concentrate, persist, and maintain pace in the RFC.[1]

#### A. Plaintiff's Testimony

In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). In weighing a claimant's credibility, an ALJ may consider "the claimant's daily activities." *Id.* (internal quotation omitted). "Daily activities can form the basis of an adverse credibility finding where the claimant's activities (1) contradict her other testimony

---

[1] Plaintiff also argues that because the ALJ's decision is based on a defective RFC and vocational hypothetical, it is not supported by substantial evidence. (Pl.'s Mot. at 24-25.) This argument is dependent on Plaintiff succeeding on her other arguments, and therefore will not be discussed separately. (*See id.* at 25 (Here, the ALJ's RFC findings and vocational hypotheticals failed o include limitations established by Ms. Bunting's improperly rejected testimony, the improperly rejected lay witness testimony, and the improperly rejected opinions of Dr. Cain, Dr. Wilson, and MFT Voska.").)

3

or (2) meet the threshold for transferable work skills." *Sabin v. Astrue*, 337 Fed. Appx. 617, 620 (9th Cir. 2009) (citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

First, Plaintiff argues that the ALJ erred in rejecting her testimony because the ALJ failed to identify the specific testimony he found not credible. (Pl.'s Mot. at 12-13.) The Court disagrees. Contrary to Plaintiff's assertion that the ALJ simply provided a "seriatim list of [her] activities and declare[d] them to be inconsistent with disability," the ALJ cited to Plaintiff's testimony in explaining the inconsistencies. For example, the ALJ contrasted Plaintiff's testimony regarding her fatigue with the fact that she exercises regularly, including walking and bicycling. (AR 19.) The ALJ also noted that Plaintiff was able to babysit her nieces and nephews. Likewise, with respect to her assertions that she had a significant social impairment, the ALJ pointed to Plaintiff's activities including babysitting her nieces and nephews, volunteering for a senior woman, socializing with friends and family, regular exercise, and her plans to attend a Norwegian Folk Art conference. (AR 19.)

Plaintiff contends that the Ninth Circuit "has repeatedly asserted the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Plaintiff, however, alleged significant limitations that were contradicted by these activities. For example, Plaintiff testified that she "had no energy to do anything," yet was walking thirty to sixty minutes every day.[2] (AR 52, 507.) While walking for this amount of time may not by itself be sufficient for an adverse credibility finding, when contrasted with testimony that Plaintiff could not do anything, the ALJ could reasonably find an inconsistency. Likewise, Plaintiff testified that she had social anxiety and no friends, which is contradicted by her testimony that she babysat, volunteered for an older woman, socialized with her friends and family, and planned on going to a folk art conference that

---

[2] Plaintiff correctly observes that the ALJ erroneously stated that Plaintiff "reported aerobic exercise more than 20 minutes three times a day," when Plaintiff actually reported aerobic exercises of "[m]ore than 20 minutes 3x/week." (Pl.'s Mot. at 14; AR 20, 527.) This error, however, is harmless, as the ALJ could still find that Plaintiff was not credible based on Plaintiff's other activities, including her walking. Further, aerobic exercise of twenty minutes three times a week is also inconsistent with her testimony that Plaintiff had no energy to do anything.

4

would, presumably, require significant social interaction. (*See* AR 56.) Again, while Plaintiff argues that these are not social interactions that would be sufficient in a workplace, the issue is that Plaintiff's actual activities were inconsistent with her testimony regarding her social anxiety, and therefore the ALJ could find her not credible.

Plaintiff also challenges the ALJ's finding that Plaintiff was not credible because her "treatment has been essentially routine and/or conservative . . . . [Plaintiff] uses over the counter pain medication, a TENS unit for back pain, and gabapentin for neuropathic pain." (Pl.'s Mot. at 15; AR 19.) Citing to Tenth Circuit precedent, Plaintiff contends that this was improper because there was no evidence that other treatments could have been prescribed. (*Id.*) In general, however, "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Courts in this Circuit have found over the counter pain medication, a TENS unit, and gabapentin to be conservative treatment. *See Findley v. Saul*, 2019 U.S. Dist. LEXIS 147761, at *26 (E.D. Cal. Aug. 28, 2019) (finding a TENS unit to be conservative treatment); *Hesketh v. Berryhill*, Case No. 15-cv-2396-SB, 2017 U.S. Dist. LEXIS 78167, at *18 (D. Ore. May 23, 2017) (finding Gabapentin to be conservative treatment); *Cardenas v. Berryhill*, Case No. EDCV17-1525-AFM, 2018 U.S. Dist. LEXIS 63816, at *7 (C.D. Cal. Apr. 16, 2018) (finding that treatment with over-the-counter medication and gabapentin was conservative). Thus, the ALJ could use evidence of Plaintiff's conservative treatment to discount her testimony.

Finally, Plaintiff argues that the ALJ should not have discounted Plaintiff's testimony based on her "reported improvement with ADHD and depression with medications." (Pl.'s Mot. at 15; AR 19.) The Court agrees that the ALJ erred, as the Ninth Circuit has "emphasized [that] while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the curse of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Rather, the ALJ should "describe [the claimant]'s symptoms, course of treatment,

1    and bouts of remission, and thereby chart a course of improvement . . . ." *Id.* at 1018. Here, the

2    ALJ only identified records, without specific pin cites to where Plaintiff showed improvement,

3    and did not discuss her progress or her general course of treatment. The Court, however, finds this

4    error harmless, as the ALJ already identified other clear and convincing reasons for discounting

5    Plaintiff's testimony.

### B. Lay Testimony

"Lay testimony as to a claimant's symptoms on how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). "[T]o discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness," although the ALJ is not required to "discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* (internal quotation omitted). Further, "[w]here lay witness testimony does not support any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se." *Id.* at 117.

Plaintiff argues that the ALJ erred in rejecting the third-party statements of Joanne Cooper, Plaintiff's sister, and Alexandra Brown, Plaintiff's friend. (Pl.'s Mot. at 17-18.) Plaintiff does not contend that either lay witness testimony supports limitations not already described by Plaintiff. Rather, Plaintiff argues that the ALJ did not provide valid reasons to reject their testimony, pointing to the ALJ's failure to validly reject Plaintiff's testimony.

As discussed above, however, the ALJ did provide valid reasons for rejecting Plaintiff's testimony. Those reasons apply equally well to the lay witness testimony. For example, Ms. Cooper stated that Plaintiff appeared to have no "social contacts for the past several years except for a close friend whom she only sees occasionally." (AR 374.) Such testimony is contradicted by Plaintiff's activities, which included caring for an elderly lady several times a week and

walking with her friend in the evenings. (AR 19; *see also* AR 552.) Indeed, Ms. Brown herself testified that she saw Plaintiff weekly. (AR 283.) Likewise, Ms. Brown stated that Plaintiff was too ill to leave her house on most days, and would only go outside twice a week to walk her dogs. (AR 283, 286.) This was contradicted by Plaintiff's daily activities, which include walking thirty to sixty minutes a day. (AR 19.) Accordingly, the Court finds no error because "the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony." *Molina*, 674 F.3d at 1117.

### C. Improper Rejection of Medical Opinions

The court "distinguish[es] among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing reasons.'" *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). If a treating physician's medical opinion is contradicted by another doctor, the ALJ must identify specific legitimate reasons supported by substantial evidence to give more weight to the non-treating doctor's opinion. *Id.*

#### i. Dr. Wilson

Jennifer Wilson, M.D., is Plaintiff's treating physician, and had treated Plaintiff since January 7, 2016. (AR 475.) On April 3, 2017, Dr. Wilson filled out a Medical Source Statement, in which she opined that Plaintiff was not capable of performing sustained sedentary work or light work on a regular and continuing basis. (AR 472-473.) Dr. Wilson also stated that her opinion would not change even if Plaintiff had the freedom to alternate sitting and standing during the workday. (AR 473.) Dr. Wilson further opined that Plaintiff had moderately severe limitations on her ability to maintain attention and concentration for extended periods, to perform activities within a schedule and maintain regular attendance, and to complete a normal workday and

workweek without interruptions from medically based symptoms. (AR 474.) At the end of the Medical Source Statement, Dr. Wilson explained that Plaintiff not only suffered from chronic Lyme disease, pain, fatigue, and poor concentration, but that she also had significant depression and attention deficit disorder. (AR 475.) Dr. Wilson noted that Plaintiff was working with a psychiatric nurse practitioner for medical management and coping skills, but that she still suffered from chronic daily pain and debilitating fatigue that prevented her from seeking or sustaining gainful employment. (AR 475.)

The ALJ gave little weight to Dr. Wilson's opinion "because the limitations are too extreme, and the opinions is not consistent with or supported by the unremarkable treatment notes from Dr. Wilson at Exhibit 10F. She has also had a limited treating relationship." (AR 20.)

Plaintiff argues that the ALJ erred by only considering the records at Exhibit 10F, which covered only two of Plaintiff's visits with Dr. Wilson on January 6, 2016 and January 28, 2016. (Pl.'s Mot. at 19.) The Court agrees. As an initial matter, the Court observes that it is unclear how Dr. Wilson's notes from these visits were "unremarkable." Dr. Wilson's January 6, 2016 treatment notes observed that Plaintiff reported spine and joint pain, causing her to wake up ten times a night in order to move her legs. (AR 482.) Plaintiff also reported itchy red eruptions on her scalp, fatigue, memory loss, insomnia, muscle cramps, joint pain, and anxiety. (AR 482-83.) Likewise, Dr. Wilson's January 28, 2016 treatment notes stated that Plaintiff felt sick after showering or bathing, felt like she had no memory or recall after contracting Lyme disease, and struggled to keep track of time. (AR 477.)

Even if the treatment notes from these first two visits were unremarkable, the ALJ ignored the treatment notes from Plaintiff's later visits with Dr. Wilson, which were closer in time to Dr. Wilson's April 3, 2017 Medical Source Statement. For example, during a May 16, 2016 visit, Plaintiff reported she had pain in her back to the point that she could not stand. (AR 519.) Dr. Wilson assessed major depression, chronic pain syndrome, migraines, post-Lyme disease syndrome, and ADHD. (AR 520.) During the July 19, 2016 visit, Dr. Wilson stated that Plaintiff "feels like her body is fighting everything she is trying to do" and that she "has horrible back pain." (AR 515.) Dr. Wilson found Plaintiff had severe depression, based on Plaintiff reporting

8

little interest or pleasure in doing things, feeling depressed or hopeless, having sudden feelings of fear or panic, having trouble sleeping in the past two weeks, and having felt like she would be better off dead more than half the days. (AR 515-16.) Dr. Wilson assessed chronic pain syndrome, low back pain, major depression, migraine, ADHD, memory change, and dysuria. (AR 516.) Such treatment notes are not "unremarkable," and would support Dr. Wilson's April 3, 2017 opinion.

Plaintiff also challenges the ALJ's characterization of Dr. Wilson's treating relationship as "limited," given that Dr. Wilson was Plaintiff's primary care physician and had treated her for over a year. (Pl.'s Mot. at 19.) Defendant responds that Dr. Wilson's treating relationship had been approximately fifteen months, but cites no authority that a fifteen-month treating relationship is so "limited" that it alone can be a specific legitimate reason to give a treating physician's opinion little weight.

Defendant further argues that the ALJ could properly reject Dr. Wilson's opinions as lacking sufficient objective support, pointing to Plaintiff's normal examination results and the ALJ's reliance on the state agency reviewing psychologists' opinions. (Defs.' Opp'n at 11-13.) The ALJ, however, did not rely on these reasons for rejecting Dr. Wilson's opinion. Defendant cannot use *post hoc* rationales to justify the ALJ's conclusion. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ -- not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

Accordingly, the Court finds that the ALJ failed to identify a specific legitimate reason for giving Dr. Wilson's opinion little weight.

### ii. Dr. Cain

Janet Cain, PhD, examined Plaintiff for a psychological consultative evaluation in December 2014. (AR 21, 449.) Dr. Cain found that Plaintiff was moderately depressed and had high anxiety, and that she appeared to have significant attentional issues during the assessment. (AR 450-51.) She further found Plaintiff would be moderately impaired in social functioning, and

9

moderately to significantly impaired in daily living and independent living. (AR 450.) Dr. Cain opined that Plaintiff's intellect was sufficiently intact to understand, carry out, and remember very simple instructions, but that she would have difficulty with more complicated instructions and changes in the routine work setting. (AR 451.) Plaintiff would also have difficulty with attendance given her significant health issues, and would have difficulty responding appropriately to coworkers, supervisors, and the general public secondary to mental health issues that could be related to Plaintiff's Lyme disease. (AR 451.)

In reviewing Dr. Cain's opinion, the ALJ observed that "[a]lthough the examiner noted the claimant's daily living and independent living skills were moderately to significantly impaired from prior level of functioning, she also wrote that the claimant did basic chores around the house." (AR 21.) The ALJ ultimately gave Dr. Cain's opinion partial weight because it was "not fully consistent with the record." (AR 21.) While he gave weight to the finding of severe mental impairments, he found that assessed limitations beyond the RFC were "not supported or consistent with the normal mental status examinations in the treatment record or the mental functioning activities necessary to perform claimant's volunteer work or other reported activities as discussed above." (AR 21.)

Plaintiff argues that the ALJ erred because not all of the mental status examinations referred to by the ALJ were normal. (Pl.'s Mot. at 21.) The Court finds no error. The ALJ did not state that every mental status examination was normal, although the majority were, including the four most recent exams between October 31, 2016 and April 5, 2017. (AR 543, 546, 550, 552.) While there were several mental status examinations prior to October 31, 2016 that indicated depressed mood or sad affect, the ALJ could reasonably find an inconsistency given the many normal mental status examinations during that same period. (*See* AR 556, 561, 565, 570, 575, 577; *see Hansen v. Berryhill*, Case No. C17-5379-MAT, 2018 U.S. Dist. LEXIS 19489, at *17 (W.D. Wash. Feb. 6, 2018) (finding no error in giving less weight to an examining physician where "most of the mental status examination findings were normal"); *Rebecca Louise Q. v. Comm'r of Soc. Sec.*, No: 2:17-CV-380-FVS, 2019 U.S. Dist. LEXIS 51875, at *15-16 (E.D. Wash. Mar. 27, 2019) (finding no error in giving less weight to an examining physician "since

10

most mental status exam findings were essentially normal").)

Plaintiff also challenges the ALJ's finding that Plaintiff's volunteer and other daily activities were inconsistent with Dr. Cain's opinions. The Court disagrees. A conflict between a doctor's opinion and a claimant's daily activities "may justify rejecting a . . . provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, for example, Dr. Cain found that Plaintiff was moderately to significantly impaired in her daily living and independent living skills, which the ALJ found inconsistent with Plaintiff's activities previously described in the ALJ's opinion, including that Plaintiff lived on her own, took care of her dogs, handled her personal care, prepared her own meals, and did laundry and other household chores. (AR 18-19, 21, 450.)

Accordingly, the Court finds that the ALJ identified specific and legitimate reasons for discounting Dr. Cain's opinions.

### D. Ms. Voska

Michele Voska, MFT, is Plaintiff's treating therapist. (AR 470.) On April 5, 2017, Ms. Voska wrote an evaluation, stating that Plaintiff's social functioning had diminished over the past six months and that her depression made it difficult to interact with people. (AR 470.) Plaintiff reported debilitating depression and anxiety, which made it extremely difficult to leave her house and interact with people. (AR 470.) Ms. Voska opined that Plaintiff could not hold a job, and that Plaintiff's ability to understand and remember detailed and complex instructions was very poor. (AR 471.) Plaintiff also could not maintain attention and concentration, and would not be capable of accepting instructions from and responding appropriately to a supervisor. (AR 471.) Plaintiff would also not be capable of interacting with co-workers or the public, and would suffer emotional deterioration in a work environment. (AR 471.) Ms. Voska further opined that Plaintiff's pain from Lyme Disease would prevent Plaintiff from sitting more than ten minutes at a time, and could not lift anything remotely heavy. (AR 471.)

The ALJ gave little weight to Ms. Voska's opinion because it "is not consistent with the record as a whole." (AR 20.) The ALJ also noted that Ms. Voska was not a physician, and that therefore her "opinion regarding the claimant's functioning related to her Lyme disease . . . is outside of the specialty area of this therapist. However, considering her statement that the

11

claimant cannot lift items that are remotely heavy suggests that she can lift at the light or medium levels." (AR 20.)

The Court finds that the ALJ erred in rejecting Ms. Voska's opinion. Ms. Voska is a therapist, which is not an acceptable medical source. *See Quezada v. Berryhill*, No. EDCV 16-1013-KS, 2017 U.S. Dist. LEXIS 81477, at \*13 (C.D. Cal. May 25, 2017). The ALJ may only disregard her testimony if he "gives reasons germane to each witness for doing so." *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223-24 (9th Cir. 2010). SSR 06-03p provides that non-acceptable medical sources should still be evaluated under the same factors as all other medical opinions, such as the length of the treating relationship, the extensiveness of the examinations, the extent to which the examiner's conclusions are supported by the record, the consistency of the opinion with the overall record, and the specialization of the examiner. The ALJ, however, did not review any of these factors, except a conclusory statement that Ms. Voska's opinion was not consistent with the record as a whole. The ALJ did not meaningfully consider Ms. Voska's treating relationship with Plaintiff, which had lasted for approximately a year and a half by the time of her evaluation, and his review of the consistency of the opinion was incomplete and lacked any explanation. Accordingly, the Court finds that the ALJ's rejection of Ms. Voska's opinion is not supported by substantial evidence. *See Brickman v. Berryhill*, Case No. 17-cv-6487-RMI, 2019 U.S. Dist. LEXIS 34217, at \*13-19 (N.D. Cal. Mar. 4, 2019) (finding the ALJ erred in rejecting a therapist's opinion when the ALJ failed to consider the significance of the treatment relationship and dismissed the therapist's opinion as "not consistent with the evidence as a whole" without discussing the evidence further).

### E. Failure to Include Moderate Limitations Regarding Concentration, Persistence, and Maintaining Pace

Plaintiff argues that the ALJ erred because the RFC did not take into account the ALJ's finding that Plaintiff had moderate limitations regarding concentration, persistence, and maintaining pace. (Pl.'s Mot. at 23-24; *see also* AR 17.) The ALJ found that Plaintiff had the RFC to perform medium work, except that she could carry out simple and detailed, but not complex instructions. (AR 18.)

Plaintiff relies solely in *Brink v. Commissioner of Social Security*, 343 Fed. Appx. 211, 212 (9th Cir. 2009). (Pl.'s Mot. at 23-24.) There, the Ninth Circuit found that the ALJ had erred where he accepted medical evidence that the claimant had moderate difficulty maintaining concentration, persistence, or pace, but asked a hypothetical of the vocational expert that referenced only "simple, repetitive work" with no limitations on concentration, persistence, or pace. 343 Fed. Appx. 211, 212 (9th Cir. 2009). The Ninth Circuit found that "simple, repetitive work" did not sufficiently encompass difficulties with concentration, persistence, or pace, as "repetitive, assembly-line work of the type described by the expert might well require extensive focus or speed." *Id.*; *see also Lubin v. Comm'r of Soc. Sec. Admin.*, 507 Fed. Appx. 709, 712 (9th Cir. 2013) (finding that a hypothetical of an individual limited to one to three-step tasks did not adequately consider the ALJ's prior finding of moderate limitations in concentration, persistence, or pace).

Courts in this district, however, have found that *Brink* "only opines on the completeness of vocational hypotheticals; it does not stand for any similar proposition with regard to RFC determinations." *Stephens v. Colvin*, Case No. 13-cv-5156-RS, 2014 U.S. Dist. LEXIS 170423, at *14 (N.D. Cal. Dec. 9, 2014); *see also Markell v. Berryhill*, Case No. 17-cv-792-MEJ, 2017 U.S. Dist. LEXIS 203447, at *21 n.2 (N.D. Cal. Dec. 11, 2017). Accordingly, *Brink* is inapposite and does not apply.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. Because it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand is appropriate. On remand, the ALJ must properly evaluate the medical evidence based on applicable law and consistent with this opinion.

IT IS SO ORDERED.

Dated: March 26, 2020

KANDIS A. WESTMORE
United States Magistrate Judge

13